I am Edward Bull. I'm here on behalf of the appellant and the plaintiff, Samson Ili. We intend that the district court improperly adjudicated this Jones Act Siemens case rather than allowing the jury to adjudicate the case. Help me on a little detail. I don't think it's very important actually, but I don't want to be wrong on it. One of your contentions is that the 16-hour shifts promote accidents because they're too long, people get too tired. Does that count only toward Jones Act negligence or does it also count toward unseaworthiness? It would account to both, Your Honor, under a different standard. Under the Jones Act question, it would be a question of whether that was the result of an unreasonable act or negligence. Under the unseaworthiness cause of action, it would be whether that was an unreasonable or a not reasonably fit condition in the workplace. Those are just different words for the same thing? Yes. Well, they both have an objective standard. The Jones Act negligence cause of action requires standard garden variety negligence and then has, of course, a very less lightened standard. Under unseaworthiness, it's a strict liability standard, but it doesn't mandate that the workplace be perfect. It mandates that the workplace conditions be reasonably fit for their intended purpose. Now, let's talk about the time. The times are all confused. The shift 16 hours and it goes from midnight to 4.30 and, of course, that's 16 and a half hours, but I gather the extra half hours because of two 15-minute breaks, something like that? I don't understand. I'm not sure, Your Honor. I will say that I think that the length of the shift and the hours of work were an element of the claim. They were not the primary thrust of our factual argument in the case. So, yes, we felt that it was negligent to have these individuals working those long hours. Yes, Mr. Ely testified that he was tired at the end of his shift, but, again, that was not really the core thrust. And as far as the exact core, I don't understand. Do you mean you're not claiming that if everything else fails that that's enough so you should get to trial? I would probably have to concede, Your Honor, based on the record that we had at the time of the motions hearing that that would probably not be enough for us to prevail. Two primary thrusts of our motion, and I notice that my time clock is not... It's okay if we don't... Some moments seem to last forever. That's all right. I don't mind, particularly when I'm talking, Your Honor. I've been told before, but I just want to make sure I'm keeping track of the time on my own. There we go. I have a green light in eight minutes and 58 seconds. Very good. She caught me. Two primary thrusts or points we'd like to emphasize, the law applicable to this case and the facts or the evidence that we believe were sufficiently established in the record at the time of the motion such that the case should have gone to the jury. I won't discuss the standard on summary judgment. I think we all know that, but I think it's important to underscore the special nature of these remedies for merchant semen. They really are not intended to be fair or balanced. They're intended by the United States Congress and by the courts, again and again, emphasizing the need to protect this particular class of water. You are certainly right. The semen is the darling of admiralty, is the way the case is put. However, I am not sure that I can figure out exactly what the cause of the accident is in a way that gives rise to the negligence or unseaworthiness. It looks as though ice sometimes built up under the freezer, but it didn't slip on the ice. Well, Your Honor, the... I'm sorry, and it looks as though there's no place to grab, but there's no indication he could have grabbed anything anyway. You fall pretty fast. Fair questions. We have two things we have to look at here. I'm not faulting the district court's ultimate judgment in the case. If a jury had made that decision or if this had been a bench trial, we can weigh all of those facts and perhaps a genuine issue. I think it's a very... Our view is that it's a very factual inquiry, and if I may... Focus on causation, if you would, because that's the piece that seems to me is persistently missing. The only causation that Mr. Ely himself identifies appears to be the sudden roll of the ship. Everything else, it might be logical to believe that would make a difference, but I don't find anything whatsoever in the record to suggest that the causal link... Granted, the law makes it a very weak causal link of all you need, but I don't see anything that creates any causal link between the attributed causes and the accident. Let me go through with a couple of examples of the alleged negligence, and I'll comment on the causation. For example, Mr. Ely, the record shows, had fallen in that same location before and testified that he subjectively believed that he was not allowed to and should never... Bear in mind, when you're falling and you need to grab something, you don't turn and look and think, okay, I can put my hand here. He felt that he could not use any of that equipment around him to stabilize himself, because in a blink of an instant, if he reached into the wrong position, he could severely injure himself, either with the freezers... But in the record, there's an indication he was in a position to grab onto anything. He's carrying these big trays, his hands are full, the sudden roll of the ship. Is there anything that he says, if I'd had an opportunity to grab onto a handrail, I would have done so, or could have done so? Well, I think it's implicit in his testimony. What he says is, first of all, the aisle is very narrow. He's within inches on either side of what could be handrails or those upright beams, and he testified specifically, there was nothing I could grab. He threw the pan, he dropped the pan as he tried to balance himself and then fell backward, never extending his arms or grabbing anything. So our requested from American Seafoods that they install handrails in the area, and that request had never been accommodated. So if there had been handrails, he could have reached out and grabbed the handrails and stopped himself from falling. I was trying to figure out what you would do when I've slipped and fallen on... We don't have a rolling ship in Fairbanks, but plenty of ice. When I've slipped and fallen, it happens awfully fast, and I couldn't have grabbed anything. But I was trying to figure out, suppose you could, suppose you were more agile than I am, and you had time to drop your pan and grab something. I was thinking, you've got this 70-pound pan, and you're trying to move it from the freezer to the conveyor belt, and if they put on handrails, it's an obstruction that makes it harder to do it. I couldn't figure out how you'd put the handrails there. Well, the handrails could be run at the same level as various horizontal rails in the framing, right at the level of the worker's position. There are handrails at various locations in the processing facility. Mr. Ely's testimony was that as the ship rolled, he changed his position in an attempt to balance himself, and that as he was doing that, he began to slip and fell backwards and was not able to grab on. There are a lot of these fishing boats. Was there any evidence about how other fishing boats do the handrail thing? There was not any other evidence of how the other fishing boats... The case was based primarily on how American Seafoods did it and what was done in their workplace. Now, what I was responding to is to say, well, what would be the causal connection, no matter how slight, to if there had been handrails? Could a reasonable trier of fact have found that Mr. Ely could have grabbed ahold of those handrails and prevented himself from falling? That's one issue. The other issue that we know about is that he was trained affirmatively not to grab those handrails, to grab the moving equipment. That's put his hand on the moving conveyor belt. Sort of a Pavlovian training. Is there a fish chopper there? No, there are moving conveyor belts. In some areas, they have turning points where the conveyor belts meet. Various areas are dangerous. Other areas are not. Our argument was he doesn't have the time to look. What he has is the foresight to know in that instant when he does have to act very quickly. Your point underscores our concern with the idea of American Seafood's suggestion that he could grab those upright rails. It has to be done in an instant. It has to be done quickly. So, again, on the issue of causation, Your Honor, we point to that. On the issue of the ice, the testimony, Mr. Ely's testimony was that ice was constantly forming in the area where he slipped. He didn't know what he slipped on, but he did know that he slipped. He did not lose his- He said he slipped. I thought he said his knee gave way when the ship rolled. No, it's very important, and I can't give you line and verse, but it's in the record, and we underscored that in our brief, that he said he slipped, and his foot slipped out while he was attempting to balance himself. And the record shows, again, that we had a similar accident two weeks earlier, ice on the deck, reported to the captain and the safety officer, which was never followed up on. Are you saying he slipped on the ice? I'm saying that there's a fair inference that he slipped on the ice, given that there was nothing else that he could have slipped on, given the fact- Okay, where's he saying he slipped? Your Honor, I have to- I can check the record. I know we referenced it in our reply brief, and it may give me a quick reference to the record. I'm looking at 444, where he wrote it, but I'm sure he testified about it. He did, Your Honor, and I apologize for not having that at my fingertips. I notice I have a minute and 50 seconds- 444, he says he lost his balance on the boat, and then it's hard to read it, but I think it probably says rolled. Well, I simply submit that, indeed, I'm very- Oh, here we go. He clearly testified, this is in- I'm referencing, I'm sorry, to page 25 of ASC's brief, but that he slipped, and I quote, slipped after he attempted to shift his weight. It is in his deposition testimony, not in his declaration. Do you have a page in the excerpts there? I'm afraid I don't, Your Honor. I'm looking at my reply brief. I'm sure in my opening brief, we do have that. While I'm looking- I don't want to take up all your time. I figured- I'm very confident that that is in the record. That was his testimony. And again, on each of these elements, that he had fallen before, that he had requested handrails, that he subjectively and correctly believed that sticking his hands possibly into moving machinery was unsafe, that he had slipped, not that he had lost his balance, that ice consistently formed in the area, that other workers had slipped the week before, two weeks before, and been injured, that nothing had been done to remedy that condition, and that he then fell. I think all of that is substantial evidence upon which a reasonable trier of fact could conclude that the negligence of ASC caused this accident, or that there was a condition on the vessel which was not reasonably fit, and that this condition, or these acts of negligence, were a cause, no matter how slight, of his injuries. And I believe that the court stepped into the position of the trier of fact here. If we look at ASC's reply brief, if we look at their opposition brief in the motion, if we- I'm sure counsel will go on in a moment. They have lots of arguments on each one of these points, that these were safe things to grab a area, that Mr. Ely didn't point specifically to the ice. But those are all simply counter factual assertions, which is why we have the right to a jury trial, why Congress has given this right to the seaman, that the seaman did not have in this instance, your honor. Thank you, counsel. Thank you very much. May it please the court. My name is Tony Gaspis. I represent the police in the case. This court should affirm the summary judgment decision of the district court, and also the order excluding the expert declaration submitted in connection therewith, with the declaration of the expert, because the plaintiff, in this case the appellant, did not act in a timely manner in making that disclosure, as many- this was a subject of which- I'd have been the district judge. I sure would have granted relief had the plaintiff asked for an extension of time on it, because the whole thing arose out of his courtesy and not moving to compel when you were late on discovery. Yes, your honor. But the issue for this court to decide is not necessarily what, if you had a variety of judges to consider the issue, whether what the majority would do. The sole issue before this court- I'm sorry, your honor. I said that can be tactical, to be late on discovery so that the other side gets squeezed on its witness list requirements. Well, there was no- there's no evidence of any tactical decisions here. The fact is that the documents on which the expert made his opinion were in the hands of the- were the hands of counsel weeks before the report was due. So therefore, all of the facts on which he based his opinion that was submitted three months later were in the hand. There was nothing further that was done. The other side was late on discovery, right? Yes, your honor. There was a delay in getting discovery responses. Incidentally, did Illey testify in his deposition that he slipped?  To his deposition? A question? Did he use it in an answer? I don't understand what- What- Illey doesn't ask the questions in a deposition. That's why I don't understand. What Mr. Ely said- ER 425. Thanks. ER 425. That's the page I was looking at, yes. What Mr. Ely said in his deposition is that the vessel rolled, and this is a very important part on this appeal. Mr. Ely in his deposition, in his injury report he filled out afterwards, and to many statements to his doctor, said that the only cause that he could identify for his fall was the roll of the vessel, which of course under jurisprudence of this court and other courts does not give rise to liability under the Jones Act or under the general maritime law for unseaworthiness. In that particular testimony, what he said was, the vessel started to roll, I lost my balance as Doug Kleinfeld indicated. He went down quickly with this, and then he said, my left foot moved, then all this weight shifted to my right foot, and my right foot slipped, went to the side, and hit the structure of the conveyor belt. Now, the issue that the plaintiff wishes to argue is that there's a reasonable inference from Mr. Ely's use of the word slip, that that means there must have been something wrong with the deck, either ice or there was something wrong with the deck rating. But that is not a reasonable inference in this context, and does not give rise to a genuine issue of material fact that precludes summary judgment, and the reason is as follows. First of all, at the point that the vessel is rolling, and the second foot slips, he's, if I could step out to the side, he's testified that he's standing like this, moving the hands from left to right, and what's important to understand is that this is a space that's just about the distance of a man, a width, just slightly longer, and the left foot goes forward, now he's on his right foot, and he says this slips to the side, but what's significant about this is that the vessel is rolling, it's dynamic, it's in motion, and all of his weight is now shifted on a now angled surface with momentum this way. I mean, it's an observation that my foot slipped. It's not necessarily a word that leads to a conclusion that in this instance there was anything wrong with the deck. I had the impression the freezer is on his left side. That's correct. And which foot does he say slipped? The left. I'm sorry, the left foot was thrown forward. Counsel, we're trying to record this. Oh, I'm sorry. The left foot was thrown forward with the roll, and now all of the weight was shifted to his right foot, and then he said the right foot slipped or moved to the right. It impacted a part of the structure that was just immediately to his right. Right foot slipped? Right foot, yes. So the question is, is it a reasonable inference? Is there anything else that in this, this really impacts two arguments of the plaintiff. One is the, that there was something wrong with the deck rating. Taking the evidence most favorably to Illey, did the ice, could the ice have been under his right foot? No. And the reason is, is because there's not any evidence to area where he was standing. Are you speaking the area generally, or are we parsing it down? Because I know there was discussion about ice being a few inches from one side or the other. If that was the case, which side would the ice have been? The only evidence, there's only three pieces of evidence in the record that deal with the ice. One is the testimony of Mr. Yamashita, the factory manager, who said that the only place where ice accumulates is by the coils. This is a plate freezer. You have coolant that circulates through the plates of it. The coils are at one end, which are off the deck rating. And he said on occasion, if they, that you can get a little three inch area. Now this area is about approximately three feet wide. There's a three inch area next to the plate freezer where you can get some ice. Now if you look at the testimony, in relation to where he was at the time, does that mean it would be on his left? Is that the side that you described the freezers being on? That would be five or more feet. That would be five or more feet either forward or back. Not where he was standing? No, no. It's not in the area he was standing. And that's indicated by his testimony. And there's a drawing he made at his deposition showing exactly where he was standing. And that is ER 191, which shows that he was standing toward the middle of this. So he was far and away from where the only testimony about ice existing is made. And this is supported by the testimony in his deposition. Now the only other two pieces of evidence that deal with ice are Mr. Ely's statement that there was ice that formed on the deck grading, but he doesn't say where. So it doesn't indicate that it was in the area he was. This was a declaration that was submitted in response to summary judgment after he was deposed, which he confirmed in four pages of testimony that he didn't have any idea what the cause of his accident was. So if Mr. Bull or Mr. Ely thought in fact that he slipped on ice or even suggested it, it would have been in the declaration. So therefore the declaration does not show anything other than, any more than what Mr. Yamashita said. Now the last piece of evidence regarding that is a action report about another gentleman who claims to have slipped on ice and for purposes of, on the appeal that has to be assumed as valid for consideration. But what he, all he says is I slipped on the front. Well as this, during the photographs they show and the testimony shows, these plate freezers are worked on both sides. They load pans on one side, they load pans on the other side. So when he says the front, there is absolutely no indication, even as taking it to be true, there's no indication about where, if anywhere, the ice was and whether that was in the vicinity of Mr. Ely. So the evidence does not support the conclusion or even a reasonable inference that there was ice that caused his injury. I see that I have a minute left and I will ask, if you have any questions, I'd be happy to address this. Thank you. Thank you. I think we, I think we used up the time on the appellant, didn't we? Thank you. Ely versus American Seafoods is submitted. Thank you, counsel.
judges: Alarcon, Kleinfeld, Clifton